IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES CONRAD STULL,

    Petitioner,               No. CIV S-09-0296 GGH P

    vs.

A. HEDGPETH, et al.,

    Respondent.         ORDER

_____/

I. <u>Introduction</u>

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2004 conviction for several counts related to bringing heroin and methamphetamine into the prison where petitioner was already incarcerated. Petitioner was sentenced to an indeterminate prison term of 25 years to life. This action raises the following claims: 1) sufficiency of the evidence; and 2) the trial court erred by admitting certain evidence during trial. Petition at 4-8. After carefully considering the record, the court orders that the petition be denied.[1]

\\\\\

\\\\\

---

[1] This case is before the undersigned pursuant to both parties consent. Docs. 5, 13.

1

II. <u>Procedural History</u>

This action is proceeding on the original petition filed February 2, 2009. However, because the procedural history is somewhat complex, a short discussion is set forth here.

The original petition raised eight claims. Respondent brought a motion to dismiss asserting that most claims were unexhausted. On August 6, 2009, petitioner conceded that most claims were unexhausted. In a written order, the undersigned initially vacated the motion to dismiss advising petitioner of the two alternatives for seeking a stay pending exhaustion. Petitioner was ordered to file an amended petition, along with a motion to stay, within 28 days from August 20, 2009; an extension of time of 30 days was granted on September 16, 2009. However on November 17, 2009, petitioner, not having filed an amended petition or motion to stay, or having otherwise communicated with the court, the undersigned reinstated to the motion to dismiss. All claims, save Claims 1 and 2, were dismissed as unexhausted, and respondent was ordered to answer those claims. Petitioner was ordered to file a traverse 28 days after the answer.

On December 4, 2009, petitioner filed a motion for a 30 day extension to file a motion to stay, as petitioner stated he had not received several court orders. Before the court could address petitioner's request, respondent duly filed their answer on December 14, 2009. The undersigned then granted petitioner 21 days to file a motion to stay and an amended petition. Petitioner filed an "Unperfected Petition for Writ of Habeas Corpus and Motion to Stay" on January 11, 2010.

On April 6, 2010, the undersigned denied the motion to stay and dismissed the unexhausted claims. That order also stated that respondent shall file an answer to the unexhausted claims in the amended petition and later that petitioner should file a traverse. However, the exhausted claims in the amended petition were identical to the unexhausted claims in the original petition, which of course, respondent filed an answer to on December 14, 2009.

Petitioner never filed a traverse. The undersigned believed that it was possible

due to the complex nature of the procedural history, petitioner could be waiting for an answer to the amended petition before he filed a traverse. On October 1, 2010, the undersigned granted petitioner 28 days to file a traverse, though petitioner was not required to file a traverse. On November 10, 2010, petitioner requested a 20 day extension to file a traverse that was granted by the court. The 20 day period has passed and petitioner has still not filed a traverse or otherwise communicated with the court. Therefore, the undersigned has addressed the petition and answer.

III. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application

3

of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

"Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the

constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

IV. Background

The opinion of the California Court of Appeal contains a factual summary. After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

> On February 12, 2004, [petitioner] was an inmate at Mule Creek State Prison. Prior to meeting with a visitor, [petitioner] lubricated his ear with hair grease and secreted in his nasal cavity two Bic razor blades wrapped in tissue. FN 1.
>
> FN 1
> We will refer to the evidence of the hidden razor blades as the "razor blade evidence," which we discuss in more detail below.
>
> During the visit, he walked to a section of the visiting area that had a table with condiments on it. In the midst of the condiments was a sealed latex balloon that later tested positive for heroin and methamphetamine. [Petitioner] picked up the balloon and put it in his pocket. When he was denied access to the restroom by officers who had been alerted to his activities, [petitioner] returned to his chair, put his pinky finger in his ear, lubricated it with hair grease, then reached behind the waistband of his pants and inserted the balloon in his anus. Following the visit [petitioner] was sequestered in a holding cell. Eventually he defecated the balloon into the pants leg of his prison clothing, but Correctional Officer Raoul Rodriguez found it when [petitioner] stated he needed to take a bowel movement.
>
> Lori Gambill, a correctional officer familiar with the processing of all evidence in cases originating at the prison, testified that narcotics a prisoner obtains in the visiting room are invariably brought into the room by a visitor and that [petitioner's] preparatory act of lubricating his ear with hair grease was consistent with the behavior of prisoners who anticipate obtaining and hiding illicit substances during visits.
>
> The defense was premised on lack of knowledge and criminal intent. When [petitioner] saw the balloon sitting on the condiments table he suspected it contained contraband but was unsure what was inside it. He knew it was a violation of prison rules to bring contraband into prison, but did not know whether it was a crime.
>
> The jury returned guilty verdicts on all five counts of the information, which alleged transportation of heroin (Health & Saf.Code, § 11352, subd. (a)), transportation of methamphetamine (id., § 11379, subd. (a)), possession of heroin for sale (id., § 11351), bringing heroin and methamphetamine into prison (Pen.Code, § 4573), and possession of heroin and methamphetamine in prison

5

1  (id., § 4573.6). The court thereafter found true allegations that [petitioner] had suffered numerous prior serious felony convictions.

The court sentenced [petitioner] to concurrent indeterminate prison terms of 25 years to life for each conviction, with all but one stayed pursuant to Penal Code section 654.

People v. Stull, 2007 WL 2422114 at *1.

V. <u>Argument & Analysis</u>

        <u>Claim 1 - Sufficiency of the Evidence</u>

Petitioner argues there was insufficient evidence to support his conviction that he brought drugs into the prison. Petition at 4.

        <u>Legal Standard</u>

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781 (1979). Jackson established a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. U.S. v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). First, the court considers the evidence at trial in the light most favorable to the prosecution. Id., citing Jackson, 443 U.S. at 319, 99 S.Ct. 2781. "'[W]hen faced with a record of historical facts that supports conflicting inferences,' a reviewing court 'must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Id., quoting Jackson, 443 U.S. at 326, 99 S.Ct. 2781.

"Second, after viewing the evidence in the light most favorable to the prosecution, a reviewing court must determine whether this evidence, so viewed is adequate to allow 'any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" Id., quoting Jackson, 443 U.S. at 319, 99 S.Ct. 2781. "At this second step, we must reverse the

6

verdict if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." Id.

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination. Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

Discussion

On appeal the California Court of Appeal denied petitioner's sufficiency of the evidence claim with a reasoned opinion.

> Penal Code section 4573 punishes an individual "who knowingly brings or sends into, or knowingly assists in bringing into, or sending into, any state prison," specified controlled substances, including heroin and methamphetamine. FN2.
>
> FN2. Section 4573 provides in full: "Except when otherwise authorized by law, or when authorized by the person in charge of the prison or other institution referred to in this section or by an officer of the institution empowered by the person in charge of the institution to give the authorization, any person, who knowingly brings or sends into, or knowingly assists in bringing into, or sending into, any state prison, prison road camp, prison forestry camp, or other prison camp or prison farm or any other place where prisoners of the state are located under the custody of prison officials, officers or employees, or into any county, city and county, or city jail, road camp, farm or other place where prisoners or inmates are located under custody of any sheriff, chief of police, peace officer, probation officer or employees, or within the grounds belonging to the institution, any controlled substance, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code, any device, contrivance, instrument, or paraphernalia intended to be used for unlawfully injecting or consuming a controlled substance, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years. [¶] The prohibitions and sanctions addressed in this section shall be clearly and prominently posted outside of, and at the entrance to, the grounds of all detention facilities under the jurisdiction of, or operated by, the state or any city, county, or city and county."
>
> [Petitioner] argues the evidence was insufficient to prove he brought drugs into the prison because the crime was already complete when he found the contraband in the visiting room, which was an area inside the prison, and "there was no evidence that [petitioner] did anything to assist the introduction of drugs into the visiting room." We are unpersuaded. FN3.

7

> FN3. "'To determine sufficiency of the evidence, we must inquire whether a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt. In this process we must view the evidence in the light most favorable to the judgment and presume in favor of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. To be sufficient, evidence of each of the essential elements of the crime must be substantial and we must resolve the question of sufficiency in light of the record as a whole.'" (People v. Carpenter (1997) 15 Cal.4th 312, 387, quoting People v. Johnson (1993) 6 Cal.4th 1, 38; see Jackson v. Virginia (1979) 443 U.S. 307, 317-320 [61 L.Ed.2d 560, 572-574].)
>
> Even if we assume, for the sake of argument only, that the visiting area where [petitioner] picked up the balloon filled with narcotics was within a "state prison" as used in section 4573, [petitioner] was not thereby shielded from culpability. To effect the long-standing legislative intent to prevent illegal drugs from entering prisons, we broadly construe the words "brings" and "bringing," to include "causing to come; to procure; to cause to come from, into; to bring to pass, etc. [Citation.] The word has more than a score of meanings which demonstrate that the lawmakers intended to forbid a person to cause the drugs to be delivered to a state prison." (People v. Waid (1954) 127 Cal.App.2d 614, 617.) Consequently, a defendant need not physically carry the drugs across the prison threshold in order to be guilty of "bringing" them into prison. (Id. at pp. 617-619.)
>
> In addition, the statute targets "any person ... [who] knowingly assists in bringing into, or sending into, any state prison," the specified contraband. To obtain a conviction therefor, the People must establish the defendant knowingly assisted bringing the controlled substance into prison, knew of its nature as a controlled substance, and that the substance was in an amount sufficient to be used as a controlled substance. (Cf. People v. Palaschak (1995) 9 Cal.4th 1236, 1242.) (CT 128) The dual knowledge elements may be established by circumstantial evidence. (Ibid.) "Thus, a person found in possession of secreted drugs or narcotics within a penal facility will be hard put to disprove either type of knowledge." (People v. Carrasco (1981) 118 Cal.App.3d 936, 947.) [Petitioner's] actions before, during, and after his visit were consistent with those of an individual expecting to find and smuggle into the general prison population the balloon that was left on the condiments table in the visiting room. The circumstantial evidence was persuasive that [petitioner] had arranged to have his visitor bring the narcotics into the prison, and the jury was by no means bound to accept [petitioner's] explanation that he innocently discovered them. The evidence was sufficient.

People v. Stull, 2007 WL 2422114 at *2.

Petitioner has failed to demonstrate that the state court opinion is contrary to established Supreme Court authority. Petitioner presents the same argument in the instant petition that was denied by the state courts: the drugs were already inside the prison when petitioner took possession of them, therefore he did not violate the law. Petition at 5.

8

Although couched as insufficiency of the evidence, petitioner is, in essence, taking issue with the legal definitions given by the Court of Appeal, i.e., what constitutes "bringing" contraband into prison, or what is "assisting" in bringing contraband into prison. Once the definition of law is accepted, the facts are clearly sufficient. And, except in situation where the state court has arbitrarily defined its law which then avoids a federal issue, federal court may not issue legal interpretations of state statutes at odds with the state court interpretation. See Goldyn v. Hayes, 444 F.3d 1062, 1070 (9th Cir. 2006) (a state supreme court "has wide latitude in defining and interpreting the elements of ... state crimes," which this court cannot reexamine on habeas review); see also Wisconsin v. Mitchell, 508 U.S. 476, 483, 113 S.Ct. 2194 (1993) (federal courts "are bound by a state court's construction of a state statute").

Even if this court were able to peer into state statutory interpretation, petitioner's argument would not have merit.

Reading penal section 4573 in the manner that petitioner suggests would lead to an untenable situation where the only way a prisoner could be found guilty of the crime would be to leave the physical grounds of the prison, obtain drugs, and then return to the prison with the drugs. The court is not convinced this was the legislative intent for the statute. As the state court noted, it was the legislative intent to prevent illegal drugs from entering state prisons and a defendant need not physically carry the drugs across the prison threshold to be guilty. The state court also noted that the statute punished anyone who "knowingly assists" bringing in illegal drugs. It is clear from the record that petitioner assisted in moving the drugs and even hid them inside his body to avoid detection. Petitioner's defense that he did not know the balloon contained drugs did not persuade the jury nor has he presented any arguments in the instant petition to disturb the jury verdict.

This claim is therefore denied.

Claim 2 - Admission of Evidence

Petitioner argues that the trial court erred in admitting evidence that had

9

previously been excluded.  Petition at 6.

### Legal Standards

"Habeas relief is available for wrongly admitted evidence only when the questioned evidence renders the trial so fundamentally unfair as to violate federal due process." Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993).  See also Larson v. Palmateer, 515 F.3d 1057, 1065 (9th Cir. 2008) (because federal habeas relief is limited to such instances, "[t]he correctness of the trial court's evidentiary ruling as a matter of state law is irrelevant to our review[.]"); Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998).  While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness.  Jammal v. Van de Kamp, 926 F.2d 918, 919 (citing Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir. 1983)).

The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  Payne v. Tennessee, 501 U.S. 808, 825, 111 S.Ct. 2597 (1991).  The Supreme Court has admonished that the category of infractions that violate "fundamental fairness" has been defined very narrowly. Estelle, 502 U.S. at 72.  In Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009), the Ninth Circuit noted the "Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process.  Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see Williams[v. Taylor], 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Id. at 1101.  Thus, a habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.), amended by 421 F.3d 1154 (9th Cir. 2005).

Discussion

The Court of Appeal set forth the relevant background of this claim:

[Petitioner] contends the court abused its discretion by allowing the razor blade evidence because it was untimely disclosed, and that the court's ruling had the effect of violating his constitutional rights to a fair trial and due process of law. FN4.

FN4. Respondent contends [petitioner] has failed to provide a record adequate to permit appellate review of this issue. While the record could be more complete, the basis of the court's ruling may be gleaned from subsequent references to it on the record by the court and the parties. Therefore, we proceed to the merits.

Facts
On the first day of trial, Officer Rodriguez informed the prosecutor that following recovery of the contraband, [petitioner] expelled two razor blades from his nasal cavity. The prosecutor notified the court and [petitioner's] counsel, who objected to admission of the evidence. The court excluded the razor blade evidence because it had not been disclosed prior to trial.

The court revisited its ruling during cross-examination of [petitioner]. [Petitioner] testified that he placed his finger into his ear to lubricate it with ear wax so that he could insert the balloon in his anus. [Petitioner] acknowledged that he used Three Flowers Hair Grease to moisten his hair, and that some of the grease may have inadvertently gotten into his ear while he was attempting to lubricate his finger with ear wax, but he denied putting the hair grease in his ear prior to entering the visiting room. The prosecutor then asked whether [petitioner] had anything else in his possession prior to the visit that would facilitate the smuggling of drugs. [Petitioner's] counsel objected because the question sought to elicit information that the court had excluded. The court responded: "Not now. He made it relevant; overruled." [Petitioner] admitted it would be helpful to have a razor blade so that he could cut through his pants leg and dispose of the contraband. [Petitioner] denied having razor blades on the day of the visit or expelling them in front of Officer Rodriguez.

In rebuttal, the People recalled Officers Rodriguez and Gambill, who testified that [petitioner] expelled the small disposable blades. [Petitioner] said he planned to use the blades if he got caught to cut his jumpsuit and toss the contraband into a common area when no one was looking so he could deny he possessed it.

[Petitioner's] counsel initially objected to the rebuttal testimony because it had not been disclosed during discovery, but the court responded that [petitioner] could "cover it on cross, and I'm going to give the late discovery instruction."

During an extensive cross-examination regarding the razor blade evidence, Officer Rodriguez admitted failing to mention it in his report of the incident, or to retain the blades as evidence.

The court thereafter gave CALJIC No. 2.28, which informed the jury that it could take Officer Rodriguez's belated disclosure of the razor blade evidence into

11

1     consideration in assessing its weight. FN5

2     FN5. As given to the jury, CALJIC No. 2.28 states: "The prosecution and the defense are required to disclose to each other before trial the evidence each intends to present at trial so as to promote the ascertainment of the truth, save court time and avoid any surprise that may arise during the course of the trial. Delay in the disclosure of evidence may deny a party a sufficient opportunity to subpoena necessary witnesses or produce evidence which may exist to rebut the non-complying party's evidence. Disclosures of evidence are required to be made at least 30 days in advance of trial. Any new evidence discovered within 30 days of trial must be disclosed immediately. In this case, the People failed to timely disclose the following evidence: The statement of [petitioner] Stull to Officer Rodriguez in the body cavity surveillance cell, and the discovery of two razor blades. Although the People's failure to timely disclose evidence was without lawful justification, the [c]ourt has, under the law, permitted the production of this evidence during the trial. [¶] The weight and significance of any delayed disclosure are matters for your consideration. However, you should consider whether the untimely disclosed evidence pertains to a fact of importance, something trivial or subject matters already established by other credible evidence."

People v. Stull, 2007 WL 2422114 at *2-3.

    Petitioner argues that the admission of the razor blade evidence violated his right to a fair and impartial trial. Petitioner presented the same argument on direct appeal, which the state court denied:

> Analysis
> At least 30 days prior to trial, a prosecuting attorney in possession of statements by any defendant must disclose those statements to all defendants. (Pen.Code, §§ 1054.1, subd. (a), 1054.7.) A violation may be sanctioned with an instruction to the jury advising of the failure to disclose the evidence. (Pen.Code, § 1054.1, subd. (b).) If all other sanctions have been exhausted, the court may prohibit the testimony of a witness. (Id., § 1054.5, subd. (c).) We review the court's ruling pursuant to the abuse of discretion standard. (People v. Ayala (2000) 23 Cal.4th 225, 299.)
>
> Citing Wardius v. Oregon (1973) 412 U.S. 470, 476-479 [37 L.Ed.2d 82, 88-90], which held that a severe evidentiary sanction imposed pursuant to a nonreciprocal discovery statute violated the criminal defendant's due process rights, [petitioner] "submits that the trial court's eventual ruling here deprived appellant of his due process rights of fair trial based on reciprocal discovery." [Petitioner] overstates his case.
>
> The trial court's decision to allow cross-examination and rebuttal with respect to the razor blade evidence was necessitated by [petitioner] himself, who denied knowing that the balloon was in the condiments, that it contained controlled substances, or that he lubricated his ear with hair grease. When the prosecutor

12

asked [petitioner] if he had taken any other action prior to his visit to facilitate smuggling contraband from the visiting room, [petitioner] objected because the razor blade evidence had been excluded. The court's response-"not now. He made it relevant; overruled"-shows that the exclusionary ruling extended to evidence presented as part of the prosecution's case-in-chief, but did not prohibit using the razor blade evidence as proper impeachment of [petitioner's] witnesses. It was within the court's discretionary power to revise that ruling to reflect the change in circumstances occasioned by defendant's testimony.

"A number of decisions have held that notwithstanding the existence of a constitutional or other legal impediment barring the prosecution from introducing certain evidence to establish a defendant's guilt, the evidence may be used to impeach a testifying defendant. (See, e.g., Harris v. New York (1971) 401 U.S. 222, 225[ ] [28 L.Ed.2d 1 [statements obtained in violation of Miranda ]; Walder v. United States (1954) 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed. 503 [evidence obtained in violation of the Fourth Amendment]; People v. May (1988) 44 Cal.3d 309, 315 [May] [statements obtained in violation of Miranda ]; People v. Coleman (1975) 13 Cal.3d 867, 889[ ][probationer's testimony at probation revocation hearing]; People v. Crow (1994) 28 Cal.App.4th 440, 452[ ][statements made during plea negotiations].)" (People v. Pokovich (2006) 39 Cal.4th 1240, 1246.)

We note that the court tailored its order to maintain a sanction based on the People's untimely disclosure, while avoiding the unfairness of allowing [petitioner] to present a virtually unimpeachable account of his lack of preparation for the visit. We also note that the court permitted extensive cross-examination of Officers Rodriguez and Gambill, and instructed the jury that it had the power to determine the weight to be given the razor blade evidence. Considering [petitioner's] disavowal of any preparatory acts, the court's modification of its previous discovery order was well within its discretion, and did not violate either the California or United States Constitutions.

With respect to the notion that the court's ruling deprived [petitioner] of reciprocal discovery rights, we have no reason to believe that the court would not have fashioned an equally onerous order against the People had they attempted to take advantage of a prior favorable discovery ruling in a comparable manner.

People v. Stull, 2007 WL 2422114 at *3-4.

Because violation of clearly established law as pronounced by the United States Supreme Court is the sine qua non for an AEDPA violation, see Holgerson v. Knowles, 309 F.3d 1200, 1202 (9th Cir. 2002) (habeas relief not warranted if due process violation not clearly established by the Supreme Court), the mere fact that evidence was improperly admitted under state law is not determinative. In the relevance context of evidence submitted by the prosecution, in order to qualify as a due process violation, the evidence has to be totally unnecessary to prove an element of the case, and highly prejudicial in its own right. See e.g. McKinney v. Rees, 993

13

1   F.2d 1378, 1384 (9th Cir. 1993) (admission of evidence that defendant owned a knife collection
2   irrelevant and prejudicial).  However, the Ninth Circuit has also held that the Supreme Court has
3   never so stated, and therefore, a petition filed after the AEDFPA effective date cannot be granted
4   on the basis of irrelevant, prejudicial evidence.  Holley v. Yarborough, supra, 568 F.3d at 1101.
5   The Supreme Court has not spoken to the contrary since Holley, and petitioner's claim is
6   defeated thereby.

7   But even if Holley did not supply the rule for this case, the undersigned would not
8   find a fundamental unfairness because of admission of the razor blade evidence.  Petitioner relies
9   on the late notice of the evidence for the reasons it should have been excluded.  However, the
10  evidence was excluded as a sanction, but the trial court permitted it to be admitted to rebut
11  petitioner's testimony that he did not smuggle any other items into the visitors room on the day in
12  issue.  A favorable-to-defendant evidentiary exclusion does not permit a defendant to fabricate
13  testimony.  Petitioner largely ignores this issue in his petition stating that the trial court did not
14  provide enough notice that it was reversing its previous inadmissibility decision.

15  Petitioner has failed to show that the trial court's decision to allow the razor blade
16  evidence to be used for the impeachment of his testimony was in violation of Supreme Court
17  authority.  As the state court noted, the Supreme Court has allowed the introduction of evidence
18  that had previously been suppressed.  Harris v. New York, 401 U.S. 222, 225, 91 S. Ct. 643
19  (1971); Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354 (1954).  As was also noted,
20  petitioner's counsel was able to cross examine the prosecution witnesses at length about their
21  failure to timely report this evidence and the trial court issued a limiting instruction to the jury.
22  Even if assuming arguendo that the trial court erred in allowing in the razor blade evidence, the
23  court cannot find the evidence so prejudicial as to warrant the granting of the writ.  There was
24  plenty of evidence on the primary charges regarding the drugs and there were no charges related
25  to the razor blades.

26  For all these reasons, petitioner's claim is denied.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's application for a writ of habeas corpus is denied.

2. The court declines to issue a certificate of appealability in this case.

Dated: 01/13/2011

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

ggh:ab
stul0296.hc